PATRICK L. REHILL ET AL., PROSECUTORS, v. THE MAYOR AND COUNCIL OF THE BOROUGH OF EAST NEWARK AND THE MAYOR AND ALDERMEN OF JERSEY CITY.

NEW JERSEY SUBURBAN WATER COMPANY AND THE NEW YORK AND NEW JERSEY WATER COMPANY, PROSECUTORS, v. THE MAYOR AND COUNCIL OF THE BOROUGH OF EAST NEWARK AND THE MAYOR AND ALDERMEN OF JERSEY CITY.

Argued June 3, 1904—Decided February 26, 1906.

1. Where a municipal corporation, by action *ultra vires* or otherwise, embarks in a scheme which will result in an unlawful expenditure of public funds, any ordinary taxpayer may be admitted to prosecute a *certiorari* to review such action.

2. Where respondent in *certiorari* does not challenge the *status* of the prosecutor until the argument of the cause, matters of fact upon which such *status* depends will be taken as admitted for the purposes of a motion then made for dismissal of the writ.

3. In *Pamph. L.* 1897, *p.* 232, and in *Pamph. L.* 1897, *p.* 323, § 76, as amended in *Pamph. L.* 1899, *p.* 159, the phrases "any adjoining municipal corporation" and "any adjoining municipality" refer only to municipalities whose corporate territories are contiguous.

On *certiorari*.

Before Justices FORT and PITNEY.

For the prosecutors, *Herbert Boggs* and *Collins & Corbin.*

For the respondents, *Robert Carey, George L. Record, Edward Kenney* and *Richard V. Lindabury.*

The opinion of the court was delivered by

PITNEY, J.   These writs of *certiorari* were issued for the purpose of determining the validity of a contract made December 9th, 1903, between the mayor and aldermen of Jersey City and the mayor and council of the borough of East Newark, providing for a water-supply to be furnished by the city to the borough for the term of five years at a specified rate of compensation.

Before considering the merits, we must dispose of a motion made by respondents for a dismissal of the writs, which is based upon the ground that the prosecutors have no such interest in the subject-matter as will warrant the court in setting aside the contract upon their application.   The prosecutors Rehill and wife are or claim to be taxpayers of Jersey City.   The water companies are assignees of an unexpired contract made in the year 1895 by the township of Kearny with the East Jersey Water Company for the supply of water to the township, East Newark being at that time a part of Kearny.   That such is in truth the *status* of the prosecutors was not seasonably disputed by the respondents, and must be taken to be true as matter of fact.   *Avon* v. *Neptune City,* 28 *Vroom* 701; *Biddle* v. *Riverton,* 29 *Id.* 289, 291; *Dickinson* v. *Jersey City,* 39 *Id.* 99, 102; *Lanbry* v. *Sage,* 40 *Id.* 560. Conceding it to be true, however, respondents insist that this court will not entertain an attack upon such a municipal contract unless the prosecutor in *certiorari* can show some special injury to his property distinct from and greater than the injury suffered by other taxpayers or by the public at large.   Upon this point we are referred to three recent cases in the Court of Errors and Appeals (*Jersey City* v. *Traphagen,* 24 *Vroom* 434; *Tallon* v. *Hoboken,* 31 *Id.* 212, and *Oliver* v. *Jersey City,* 34 *Id.* 634) approving upon this point the decision of this court in the same case, 34 *Id.* 96.   Also,

to two recent decisions in this court, *Morris & Cummings Dredging Co.* v. *Jersey City,* 35 *Id.* 142, 147, and *Beecher* v. *Newark, Id.* 475, 477.   All these cases, however, related to ordinances or other municipal proceedings whose effect was to authorize constructions in the public streets that without legal authorization would amount to public nuisances.   We do not understand that in these decisions it was intended to subvert the rule, long recognized and of frequent application, that where a municipal corporation, by action *ultra vires* or otherwise, embarks in a scheme which will result in the unlawful expenditure of public funds, any ordinary taxpayer may be admitted to prosecute a *certiorari* to review such action.   *State, Gregory, pros.,* v. *Jersey City,* 5 *Vroom* 390, 399; *Id.* 429; *State, Danforth, pros.,* v. *Paterson, Id.* 163, 171; *Siedler* v. *Freeholders of Hudson,* 10 *Id.* 632; *State, Hoxsey, pros.,* v. *Paterson, Id.* 489; *Conover* v. *Davis,* 19 *Id.* 112; *Read* v. *Atlantic City,* 20 *Id.* 558, 561; *Middleton* v. *Robbins,* 25 *Id.* 566, 572; *Lewis* v. *Freeholders of Cumberland,* 27 *Id.* 416, 420; *Platt* v. *Englewood,* 39 *Id.* 231.

The contract now under review assumes to bind Jersey City to furnish water to the borough of East Newark for a term of years at a fixed price.   In order to provide the water-supply the public moneys of Jersey City would necessarily be to some extent expended or put at stake.   If the contract is beyond the corporate powers of the city, the Rehills as taxpayers of the city are legally aggrieved and are entitled to prosecute the writ of *certiorari.*   The water companies, prosecutors in the other writ, have a special interest because of the Kearny contract of 1895, which has been assigned to them and which is claimed by them to be obligatory upon East Newark.   It is argued that this contract has no living force at the present time because it was abandoned by the East Jersey Water Company prior to its assignment to the present companies.   This objection, however, raises a doubtful question of fact, and since no challenge of the *status* of the water companies as prosecutors was interposed prior to the argument, the facts upon which their *status* is rested must be

taken to be admitted for the purposes of the motion to dismiss.

This brings us to the merits. The contract of December 8th, 1903, made between Jersey City and the borough of East Newark, is questioned on grounds that relate to the legal power of Jersey City to make such a contract, and also upon grounds that relate to the legal power of the borough in the premises.

For the source of Jersey City's power we are referred to the following legislation:

Charter of Jersey City, section 76 (*Pamph. L.* 1871, *p.* 1129), authorizing the city to acquire water works and to "distribute water through the corporate limits of Jersey City, and through such portions of the counties of Hudson and Bergen as the inhabitants may desire." Assuming this section is still in force, and that it applies to the water-supply that Jersey City now claims to control, in our view it gives the city no power to make a contract with another municipality, but merely authorizes it to distribute the water to the water-takers.

Act of March 10th, 1882 (*Pamph. L., p.* 83; *Gen. Stat., p.* 654), entitled "An act concerning cities," declares that in every city in which water works are owned and controlled by the city authorities, the city may extend the water mains beyond the city limits to a distance not exceeding four miles in any single direction; provided, that the rates charged to water-takers outside of the city limits shall not in any case be less than the charge for the same service within the city. The contract under review exceeds these limitations. Moreover, the act of 1882 contemplates that the city exercising the power thereby conferred shall deal directly with the water-takers, and not with another municipality, so far as relates to supply for ordinary consumption. This is manifest from the second section, which expressly authorizes the city to make a contract with the proper authorities of any municipality within which the water mains shall be extended for the maintenance and use of fire

hydrants, an implied exclusion of a contract with a municipality for any other purpose.

The act of April 17th, 1884, supplementary to an act of 1881 for authorizing municipal corporations to contract for a supply of water for public uses (*Pamph. L.* 1884, *p.* 194; *Gen. Stat., p.* 2206), by its fifth section authorizes any city, town or township to make a contract with any city, or with any aqueduct or water company having water works, for the supply and distribution of water for public and private use in any city, town or township which at the time of such contract shall not be supplied with water by any municipal or private corporation. In the first section of this supplement certain powers are conferred upon any "city, town, township or other municipal corporation." In the fifth section the words ·"or other municipal corporation" are omitted. Although the reason for this change of phraseology may not be entirely clear, we are not at liberty to ignore it. And upon the whole of the act we deem it quite clear that the word "town" (certainly as used in section 5) does not include boroughs. Indeed, had the word been intended to convey its broadest meaning, the words "city" and "township" would have been needless; likewise the words "or other municipal corporation," in section 1. The word "town" ordinarily means a town corporate, and not a borough. *Hermann* v. *Guttenburg,* 34 *Vroom* 616, 620; *Bellis* v. *Flemington,* 40 *Id.* 349, 352.

A second act of 1884, amendatory of the same act of 1881 (*Pamph. L.* 1884, *p.* 324; *Gen. Stat., p.* 2205), contains a proviso that excludes it from consideration under the facts of the present case.

The act of April 20th, 1885 (*Pamph. L., p.* 267; *Gen. Stat., p.* 655), authorizes any city of this state owning and controlling its own water works to contract with any city, town or township to supply the latter with water, subject to a proviso. This act does not justify the contract in question, because a borough is not within the terms of the enactment.

Upon the argument the authority of the city was princi-

pally rested upon the act of April 16th, 1897 (*Pamph. L., p.* 232), which authorizes any municipal corporation owning or controlling water works to make a contract with "any adjoining municipal corporation or with any private corporation therein" to furnish a supply of water for public or private use for a term of years. But the word "adjoining," in its primary and natural signification, indicates a contiguity of territory (1 *Am. & Eng. Encycl. L.* (*2d ed.*) 635; 1 *Cycl. L. & Pro.* 765; *Akers* v. *United New Jersey Railroad Co.,* 14 *Vroom.* 110, 112; *McCullough* v. *Absecon Beach Co.,* 3 *Dick. Ch. Rep.* 170, 187; *Yard* v. *Ocean Beach Association,* 4 *Id.* 306, 312), and since the territory of East Newark is not contiguous to that of Jersey City, it seems clear to us that this act cannot authorize the contract under review. We have found nothing in the situation with which presumably the legislature of 1897 was confronted that at all tends to convince us that the word "adjoining" in this act was used in any loose or uncertain meaning. Contiguity of territory is a perfectly rational basis upon which to treat the subject-matter of the legislation, and it is to be presumed that the legislature meant simply what the statute says. It is most ingeniously argued by the learned counsel for Jersey City that if the word "adjoining" is used in its primary sense it refers not to the territory of the municipality, but to the property, that is to say, the water-supply or water works, rather than the territory governed. This view seems to fit in very nicely with the supposed necessities of the present occasion, but we cannot believe that the legislature used the plain English words "adjoining municipal corporation" with any such significance.

We hold, therefore, that none of the foregoing statutes authorizes Jersey City to make the contract in question.

For the authority of the borough we are referred first to the two acts of 1884 above mentioned, which, for reasons already given, do not apply, and to the provisions of the General Borough act of 1897. *Pamph L., p.* 285. Its seventy-sixth section (at *p.* 323), as amended two years later (*Pamph. L.* 1899, *p.* 159), empowers the mayor and council

of a borough to make a contract with the governing body of "any adjoining municipality," for a term not exceeding ten years, for obtaining and furnishing a supply of water to be used in the borough for domestic and public uses.

It appears in the case that the borough of East Newark was organized in the year 1895, presumably under the General Borough act of April 5th, 1878. *Gen. Stat., p.* 179. The Borough act of 1897, in its ninety-sixth section (at *p.* 329), declares that the inhabitants of any borough theretofore established under the provisions of any law, and which thus became a *de facto* corporation, shall be governed by the provisions of this act, shall have all the powers conferred by this act upon boroughs, and shall be subject to all the duties imposed upon boroughs by this act. In our opinion the effect of the revision of 1897 is to exclude boroughs from exercising other corporate powers than those contained in this act. It results that the power of East Newark to make a water contract is limited by section 76. For reasons already mentioned, we think this section does not authorize the present contract, because the territory of the borough does not adjoin the territory of Jersey City.

In our opinion the act of April 16th, 1897, already referred to (*Pamph. L., p.* 232), and section 76 of the Borough act of the same year, are to be construed together. They have, as we think, the effect of excluding any other sort of water contract between a city and a borough saving such as is authorized by their terms. Contiguity of territory is one of the essential terms, and since this is lacking in the present case, there is no legal authority for the making of the contract. A similar view was held by Vice Chancellor Stevens, in *East Newark* v. *New York and New Jersey Water Supply Co.,* 1 *Rob.* 265, 270.

It is argued by counsel for the defendant that if these acts of 1897 be construed as applying only to municipalities whose territories actually adjoin, it results in rendering the legislation unconstitutional on the ground that the classification is based upon an insignificant attribute, arbitrarily selected. With this view we cannot agree. It was reasonable

for the legislature to place some limit upon the power of one municipality to contract with another municipality with respect to buying and selling a supply of water. To confine that power to cases where the territories of the two municipalities adjoin, and where the one municipality has a water-supply and the other needs a supply, seems to us quite rational, and furnishes a basis of classification entirely pertinent to the purposes of the legislation.

It results that the contract under review should be set aside.