THE CITY OF CAMDEN, RELATOR, v. PUBLIC SERVICE RAILWAY COMPANY, RESPONDENT.

Argued November 9, 1911—Decided March 14, 1912.

1. An ordinance passed by city council of Camden, July 26th, 1894, granting permission to a street railroad company to lay and operate a street railroad along certain streets of the city, which was accepted by the company, and which contains a provision that "all cars shall stop at street crossings clear of said crossings on signal to let off and take on passengers," is a legislative act touching a public duty, and the public duty thus imposed and assumed with respect to the operation of passenger cars may be enforced by *mandamus*.

2. The ordinance of the city of Camden granting permission to the Camden Horse Railroad Company to lay and operate a street railroad along certain streets of the city, contains a section declaring "that the provisions of this ordinance shall apply to and regulate the use of the streets above mentioned and all other streets of the city of Camden which are now or hereafter may be used by the said Camden Horse Railroad Company." *Held*, that a regulation as to the manner in which the company shall exercise its franchise, contained in section 5 of the ordinance, applies to the exercise of such franchise upon all streets now within the limits of the city.

3. The ordinance of the city of Camden granting permission to the Camden Horse Railroad Company to lay and operate a street railroad along certain streets of the city, contains a provision that "all cars shall stop at street crossings clear of such crossings on signal to let off and take on passengers." *Held*, that such provision applies to the operation within the city limits of so called "club" or "special" cars, operated from the "ferry" in Camden to Moorestown and return, and intended for the accommodation of the general public.

On rule to show cause why a writ of *mandamus* should not issue.

Before Justices TRENCHARD and KALISCH.

For the relator, *Edwin G. C. Bleakly.*

For the respondent, *Edward Ambler Armstrong.*

The opinion of the court was delivered by

TRENCHARD, J.   The city of Camden has a rule requiring the Public Service Railway Company to show cause why a writ of *mandamus* should not issue commanding the company to stop all its cars operated over and through the streets and avenues of the city of Camden, at all street crossings in the city, to let off and take on passengers, and commanding the company to provide transfers over its branches in the limits of the city of Camden, without extra charge, and to accept such transfers as fares on all its cars operated over and through the streets and avenues of the city.

In view of the decision of this court in *Newark* v. *North Jersey Street Railway Co.*, 44 *Vroom* 265, the relator abandons so much of its case as relates to transfers.

It is admitted that the Public Service Railway Company is operating a street railroad system over and through the streets of the city of Camden by virtue of the franchises given by the city to the Camden Horse Railroad Company.

It is also admitted that the company is operating "special" or "club" cars from Camden to Moorestown and return, which cars run over and through the streets of the city of Camden,

passing many of the street crossings without stopping for the purpose of letting off and taking on passengers. These cars make only three stops within the limits of the city of Camden.

The relator claims that the right to compel the company to stop its cars, including the "special" or "club" cars, at all street crossings to let off and take on passengers, arises from an ordinance passed by city council on July 26th, 1894, which ordinance authorized the Camden Horse Railroad Company to lay, maintain and operate a street railroad system in and along certain streets of the city of Camden, and provided, in section 5, that "all cars shall stop at street crossings clear of said crossings on signal to let off and take on passengers," and which ordinance was duly accepted by the Camden Horse Railroad Company.

The question to be determined is whether such ordinance is a legislative act touching a public duty, to which acceptance by the street railway company lent the added force of a contract, or whether the rights it created were essentially private, and the efficacy of the ordinance was derived wholly from the assent of the railway company thereto. If the former, then, under the decisions in *Rutherford* v. *Hudson River Traction Co.*, 44 *Vroom* 227, and *Pleasantville* v. *Atlantic City Traction Co.*, 46 *Id.* 279, it may be enforced by *mandamus*. If the latter, then under the decision in *Newark* v. *North Jersey Street Railway Co.*, 44 *Id.* 265, the city cannot enforce the ordinance by *mandamus*.

It will be observed that the duty to stop at street crossings to receive and discharge passengers differs from the duty to give transfers. It is not essential to the operation of a street railway, and the use of its franchise, that it issue transfers. It only issues them when it has agreed to so do by accepting an ordinance requiring their issue. Its liability under such an ordinance is therefore purely contractual, and the rights arising therefrom are of a private nature. *Newark* v. *North Jersey Street Railway Co., supra.*

But the duty of stopping cars to let off and take on passengers is a duty arising from the charter of the street railway company. It cannot operate its line and comply with its

charter unless it stops its cars. The ordinance in question was therefore merely a regulation of the manner in which the company should exercise its franchise. The company could not have constructed or operated its street railway system, as authorized by the ordinance, without obtaining the consent of the city council. Act of March 9th, 1893. *Pamph. L., p.* 144.

We are, therefore, of opinion that the provision of the ordinance in question was a legislative act touching a public duty, to which acceptance by the street railway company lent the added force of a contract, and, hence, it may be enforced by *mandamus. Rutherford* v. *Hudson River Traction Co., supra; Pleasantville* v. *Atlantic City Traction Co., supra; Bridgeton* v. *Traction Company,* 33 *Vroom* 592; *Wilbur* v. *Trenton Passenger Railway Co.,* 28 *Id.* 212.

The contention of the respondent that it is not required to stop its cars east of Cooper river, because when the ordinance was passed the territory east of Cooper river was not within the limits of the city of Camden, is without merit.

Section 10 of the ordinance provides "that the provisions of this ordinance shall apply to and regulate the use of the streets above mentioned and all other streets of the city of Camden which are now or hereafter may be used by the said Camden Horse Railroad Company."

The regulation as to the manner in which the company shall exercise its franchise contained in section 5, must therefore be held to apply to the exercise of such franchise upon all streets now within the limits of the city of Camden.

Nor is there any merit in the contention that the ordinance does not apply to the operation within the city limits of "club" or "special" cars operated from the "ferry" in Camden to Moorestown and return. These special or club cars are intended for the accommodation of the general public. If, in their operation, the company may lawfully ignore the obligations imposed by the ordinance, and assumed by the company, it can and probably will increase the number of its special cars to and from this and other points as future demands of suburban passenger traffic may, to the company, seem to require. In this manner, the rights of the traveling public of

the city of Camden would be disregarded, although the company was given and accepted a franchise to operate within the city upon the express condition that it stop all cars at street crossings to let off and take on passengers.

Since this matter is of public importance, and all the facts in the case are before us, it is proper that the writ should be peremptory in form.

A writ of peremptory *mandamus* will be awarded in conformity with the terms of the rule to show cause and the views herein expressed, with costs.